IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CR-133-D
No. 7:14-CV-122-D

| | |
|---|---|
| CHRISTOPHER MATTHEW HANNIGAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

On June 5, 2014, Christopher Matthew Hannigan ("Hannigan") moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his 336-month sentence. See [D.E. 33]. On July 22, 2014, the United States ("government") moved to dismiss Hannigan's section 2255 motion as untimely and filed a supporting memorandum. See [D.E. 37, 38]. On August 29, 2014, Hannigan responded in opposition. See [D.E. 43]. As explained below, the court grants the government's motion to dismiss and dismisses Hannigan's section 2255 motion as untimely.

I.

On October 14, 2009, a federal grand jury in the Eastern District of North Carolina indicted Hannigan and charged him with one count of manufacturing child pornography in violation of 18 U.S.C. §§ 2251(a) and (d) (count one), two counts of distributing child pornography in violation of 18 U.S.C. § 2252(a)(1) (counts two and three), twelve counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) (counts four through fifteen), one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (count sixteen), and one count of transporting obscene matters over the Internet in violation of 18 U.S.C. § 1462 (count seventeen). See Indictment

[D.E. 1]. On January 13, 2010, Hannigan pleaded guilty, pursuant to a written plea agreement [D.E. 22], to count one. See Rule 11 Tr. [D.E. 46] 4–21, 25–32.

On May 5, 2010, the court sentenced Hannigan to 336 months' imprisonment and a lifetime of supervised release. See Sentencing Tr. [D.E. 47] 15. The sentence was within the advisory guideline range calculated at sentencing of 292 to 360 months' imprisonment. See id. 5–6. The court entered judgment on May 13, 2010. See [D.E. 30]. Hannigan did not appeal, and his judgment of conviction became final on May 13, 2010. See, e.g., United States v. Sanders, 247 F.3d 139, 142 (4th Cir. 2001); cf. Clay v. United States, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires.").[1]

On June 5, 2014, over four years after his conviction became final, Hannigan filed his section 2255 motion. See [D.E. 33]. Hannigan states five grounds for relief. See id. 4–12. First, Hannigan contends that his defense counsel was constitutionally ineffective for failing to file a notice of appeal as directed. See id. 4–5. Second, Hannigan contends that the court's application at sentencing of U.S.S.G. § 4B1.5 for engaging in a pattern of activity involving prohibited sexual conduct violated

---

[1] Under Clay, Hannigan's judgment would not have been final until May 27, 2010, when the time for filing an appeal expired. To the extent Sanders holds that, in cases where a direct appeal is not filed, a judgment becomes final on the date judgment is entered by the district court, Clay appears to have changed the law. See Clay, 537 U.S. at 532. Several post-Clay, unpublished Fourth Circuit decisions seemingly recognize Clay's effect and have applied the Clay timeline. See, e.g., United States v. Diallo, 581 F. App'x 226, 227 (4th Cir. 2014) (per curiam) (unpublished); United States v. Osborne, 452 F. App'x 294, 295 (4th Cir. 2011) (per curiam) (unpublished); but see United States v. Brown, No. 14-7135, 2015 WL 151624, at *1 (4th Cir. Jan. 13, 2015) (per curiam) (unpublished) (citing Sanders's holding that "judgment becomes final upon entry of judgment of conviction when no appeal is taken" with approval). Because the Fourth Circuit has not yet overruled Sanders and because it has inconsistently applied Clay and Sanders, this court follows Sanders. In any event, the distinction is irrelevant in this case. Hannigan's section 2255 motion is untimely under either Clay or Sanders.

2

the Fifth and Sixth Amendments in light of Alleyne v. United States, 133 S. Ct. 2151 (2013). See id. 5–6. Third, Hannigan contends that his defense counsel was constitutionally ineffective for failing to subject the case to adversarial testing, failing to investigate the case, and for recommending that Hannigan plead guilty. See id. 7–9. Fourth, Hannigan contends that, at the sentencing hearing, his defense counsel was constitutionally ineffective for failing to ask the court to permit Hannigan to withdraw his guilty plea when the government allegedly admitted during the sentencing hearing that the minor victim in count one initiated the video feed that prompted Hannigan to ask the minor to perform a sex act, which Hannigan then recorded. See id. 9–10. In Hannigan's view, the minor's initiation of the video feed absolves Hannigan of manufacturing child pornography. See id. Fifth, Hannigan contends that before he pleaded guilty, his defense counsel was constitutionally ineffective for failing to obtain a psychiatric examination of Hannigan, for miscalculating the advisory guideline range, and for erroneously advising Hannigan that he would receive a one-year reduction in his sentence if he successfully completed the Residential Drug Abuse Program. See id. 11–12.

In response, the government moved to dismiss Hannigan's motion as untimely, citing the one-year statute of limitations in 28 U.S.C. § 2255(f). See [D.E. 38]. In reply, Hannigan argues (1) that his section 2255 motion is timely under section 2255(f)(3) due to Alleyne and Whiteside v. United States, 748 F.3d 541 (4th Cir.), overruled, 775 F.3d 180 (4th Cir. 2014) (en banc), (2) that his section 2255 motion is timely under section 2255(f)(4) because he acted with "due diligence," and (3) that equitable tolling should apply under Maples v. Thomas, 132 S. Ct. 912 (2012), because his defense counsel abandoned him. See [D.E. 43].

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually

3

sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion to vacate, the court is not limited to the motion itself. The court also may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225–26 & n.1 (1st Cir. 1993).

A.

Section 2255(f) contains a one-year statute of limitations for petitions for collateral review. Section 2255(f) provides that the one-year clock is triggered by one of four conditions, whichever occurs last:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have

4

been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4); Johnson v. United States, 544 U.S. 295, 299–300 (2005); Whiteside, 775 F.3d at 182–83.

1.

As for section 2255(f)(1), Hannigan filed his section 2255 motion on June 5, 2014, more than four years after his judgment of conviction became final. Thus, Hannigan's section 2255 motion is untimely under 28 U.S.C. § 2255(f)(1). See, e.g., United States v. Mathur, 685 F.3d 396, 397–98 (4th Cir. 2012); United States v. Thomas, 627 F.3d 534, 535 (4th Cir. 2010).

2.

As for section 2255(f)(3), Hannigan argues that his section 2255 motion is timely under section 2255(f)(3) due to the Supreme Court's decision in Alleyne and the Fourth Circuit's panel opinion in Whiteside. See [D.E. 43] 4–5. Section 2255(f)(3) and Alleyne, however, provide Hannigan no relief because Alleyne is not retroactively applicable to cases on collateral review. See, e.g., United States v. Stewart, 540 F. App'x 171, 172 n.* (4th Cir. 2013) (per curiam) (unpublished); see also In re Mazzio, 756 F.3d 487, 489–91 (6th Cir. 2014); United States v. Winkelman, 746 F.3d 134, 136 (3d Cir. 2014); United States v. Harris, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014); United States v. Redd, 735 F.3d 88, 91–92 (2d Cir. 2013) (per curiam); In re Payne, 733 F.3d 1027, 1029–30 (10th Cir. 2013) (per curiam); In re Kemper, 735 F.3d 211, 212 (5th Cir. 2013) (per curiam); Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013). Moreover, the Fourth Circuit sitting en banc vacated and reversed the Whiteside panel opinion and affirmed the decision of the district court. See Whiteside, 775 F.3d at 182–84, 187. Thus, Whiteside and section 2255(f)(3) do not help Hannigan. Accordingly, Hannigan's section 2255 motion is untimely under 28 U.S.C. § 2255(f)(3).

5

Case 7:09-cr-00133-D Document 48 Filed 03/10/15 Page 5 of 20

3.

As for section 2255(f)(4), Hannigan argues that he filed his section 2255 motion within one year of the "date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4); see [D.E. 43] 5–7. In support, Hannigan contends that he first learned that his defense counsel did not file an appeal on October 1, 2013, when the clerk of this court responded to his September 2013 written request for a copy of the docket. See [D.E. 33] 14. Thus, because he filed his section 2255 motion before October 1, 2014, Hannigan argues that his section 2255 motion is timely under section 2255(f)(4). See id.

In making his section 2255(f)(4) argument, Hannigan focuses exclusively on his claim that his defense counsel rendered constitutionally ineffective assistance by failing to file a notice of appeal in May 2010 as Hannigan directed and as counsel agreed to do. See id. 4, 14; [D.E. 33-1] 1–4; [D.E. 43] 5–7.[2] As for Hannigan's other four claims (some of which contain multiple parts), the one-year limitation period in 28 U.S.C. § 2255(f) is "applied on a claim-by-claim basis." Capozzi v. United States, 768 F.3d 32, 33 (1st Cir. 2014) (per curiam) (collecting cases from the Third, Sixth, Ninth, Tenth, and Eleventh Circuits); see also Mayle v. Felix, 545 U.S. 644, 662 (2005); Pace v. DiGuglielmo, 544 U.S. 408, 416 & n.6 (2005). Putting aside Hannigan's claim that his defense counsel failed to file a notice of appeal, Hannigan's other four claims all relate to counsel's conduct at or before Hannigan's May 2010 sentencing. Hannigan, however, has failed to plausibly allege any facts to support the conclusion that he could not have discovered those other

---

[2] In analyzing the government's motion to dismiss, the court accepts the factual allegations in Hannigan's section 2255 motion [D.E. 33] and affidavit in support [D.E. 33-1] as true. See, e.g., Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

6

four claims by the exercise of "due diligence" until June 5, 2013. See, e.g., Capozzi, 768 F.3d at 33; United States v. Black, 19 F. App'x 78, 79 (4th Cir. 2001) (per curiam) (unpublished).[3] Thus, every claim in Hannigan's section 2255 motion (except Hannigan's claim that his counsel was constitutionally ineffective for failing to file a notice of appeal) is untimely under section 2255(f)(4). See, e.g., United States v. Sawyer, 552 F. App'x 230, 232 (4th Cir. 2014) (per curiam) (unpublished); Lo v. Endicott, 506 F.3d 572, 575–76 (7th Cir. 2007); E.J.R.E. v. United States, 453 F.3d 1094, 1097–98 (8th Cir. 2006); see also Walker v. Martin, 131 S. Ct. 1120, 1129 (2011); Johnson, 544 U.S. at 308–09.[4]

As for Hannigan's ineffective assistance of counsel claim concerning his counsel's failure to file a notice of appeal as directed and as counsel agreed to do, Hannigan must plausibly allege that he could not have discovered the "new fact" (i.e., that his counsel did not file a notice of appeal) through the exercise of due diligence before June 5, 2013. See 28 U.S.C. § 2255(f)(4) (running the limitation period from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"); Deroo v. United States, 709 F.3d 1242, 1245 (8th Cir. 2013); DiCenzi v. Rose, 452 F.3d 465, 469–72 (6th Cir. 2006).

"Section 2255(f)(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). Instead, section 2255(f)(4) "resets the limitations period's beginning date, moving it from the time when the

---

[3] The court references June 5, 2013, because that is one year before Hannigan filed his section 2255 motion on June 5, 2014. Cf. 28 U.S.C. § 2255(f)(4).

[4] Hannigan's Alleyne claim also fails under section 2255(f)(4) because Alleyne is not a "fact" within the meaning of section 2255(f)(4). See, e.g., Whiteside, 775 F.3d at 183–84.

7

conviction became final, to the later date on which the particular claim accrued." Id. (internal citation omitted). Section 2255(f)(4) begins the limitation period "when the facts could have been discovered through the exercise of due diligence, not when they were actually discovered." Aron v. United States, 291 F.3d 708, 711 (11th Cir. 2002) (emphasis omitted). Thus, section 2255 is an objective test, requiring the court to determine "when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed." Wims, 225 F.3d at 190; see United States v. Denny, 694 F.3d 1185, 1189–90 (10th Cir. 2012).[5]

Although analyzed objectively, the "due diligence" inquiry is individualized and requires a court to consider the totality of the circumstances. See Aron, 291 F.3d at 712. In considering a prisoner's claim that counsel was constitutionally ineffective for failing to file a notice of appeal, a court should focus on the prisoner's conditions of confinement, a prisoner's ability to communicate with the court and counsel, and communications between the prisoner and the prisoner's counsel and

---

[5] Unlike equitable tolling, section 2255(f)(4) does not necessarily require a prisoner to actually exercise due diligence. See Janice L. Bergmann, Another Bite at the Apple: A Guide to Section 2255 Motions for Federal Prisoners § 5.24 (2009); Aron, 291 F.3d at 711 (noting that if a "court finds that [a] petitioner did not exercise due diligence, the statute does not preclude the possibility that the petitioner's motion could still be timely under [section] 2255[f](4)" if still filed within one year of the date that the relevant facts could have been discovered (emphasis omitted)); but see E.J.R.E., 453 F.3d at 1097 (stating that section 2255(f)(4) requires a petitioner to show "the existence of a new fact, while also demonstrating [that he] acted with diligence to discover the new fact"). Nonetheless, in determining whether a prisoner is entitled to reset the limitations clock under section 2255(f)(4), courts still analyze whether a petitioner has personally exercised due diligence because if a petitioner "exercised due diligence, then the one-year limitation period would begin to run on the date the petitioner actually discovered the relevant facts, because the dates of actual and possible discovery would be identical." Aron, 291 F.3d at 711; see DiCenzi, 452 F.3d at 471 ("[T]he petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ."). "It is only if [the petitioner] did not exercise due diligence that [a court is] required to speculate about the date on which the facts could have been discovered with the exercise of due diligence." Aron, 291 F.3d 711 n.1; see Bergmann, supra, § 5.24. Thus, this court will first consider whether Hannigan actually exercised due diligence in order to determine if the statute of limitations should run from the date of his actual discovery.

8

between the prisoner and the court. See, e.g., Ryan v. United States, 657 F.3d 604, 607–08 (7th Cir. 2011); Anjulo-Lopez v. United States, 541 F.3d 814, 818–19 (8th Cir. 2008); Aron, 291 F.3d at 712; Wims, 225 F.3d at 190–91. Moreover, section 2255(f)(4) "does not require the maximum feasible diligence, . . . [it requires] only 'due,' or reasonable, diligence." Aron, 291 F.3d at 712. Thus, "[d]ue diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." Id. In other words, due diligence "is an inexact measure of how much delay is too much." Johnson, 544 U.S. at 309 n.7.

The Seventh Circuit noted that "[n]o rule of thumb emerges from the cases on how long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic number." Ryan, 657 F.3d at 607. In the context of defense counsel's failure to file a notice of appeal, the Seventh Circuit also noted that a court would have to review the totality of the circumstances to determine "due diligence" in a given case and that various circuit courts have reached differing results on how long it would take a duly diligent prisoner to discover that the prisoner's lawyer failed to file a notice of appeal. Id.; compare, e.g., Granger v. Hurt, 90 F. App'x 97, 100 (6th Cir. 2004) (prisoner may wait at least two months after his sentencing hearing before even inquiring whether counsel followed instructions and filed a notice of appeal and still be found to have acted with "due diligence"), and Wims, 225 F.3d at 188, 191 (prisoner who waited five months to file his motion to vacate may have acted with "due diligence" given that he only waited four months after his sentencing hearing before inquiring whether his counsel filed a notice of appeal), with Anjulo-Lopez, 541 F.3d at 818–19 (prisoner who "waited an entire year to even contact his attorney regarding his appeal" did not act with "due diligence" (emphasis omitted)), and Montenegro v. United States, 248 F.3d 585, 588, 593 (7th Cir. 2001) (prisoner who waited nearly two years to file a motion to vacate did not act with "due diligence" given that six months after his sentencing hearing the prisoner had

9

received a docket sheet "that revealed that an appeal in his case had not been filed"), partially overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th Cir. 2001). "[T]he district court need not decide precisely how long is too long if it can safely say that, whenever the line is, [the prisoner's case] lies on one side or the other." Ryan, 657 F.3d at 608.

In analyzing Hannigan's "due diligence" under section 2255(f)(4), the court notes that Hannigan pleaded guilty on January 13, 2010, pursuant to a written plea agreement. During the court's Rule 11 proceeding the court referenced the one-year statute of limitations that applies to filing a motion to vacate, set aside, or correct a conviction or sentence under 28 U.S.C. § 2255. See Rule 11 Tr. 13. The court also discussed Hannigan's appellate rights and his rights under 28 U.S.C. § 2255. See id. 13–14, 27–29. Specifically, the court advised Hannigan about the waiver in his plea agreement, in which he agreed:

> To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

Plea Agreement [D.E. 22] ¶ 2(c); Rule 11 Tr. 27–29. Hannigan swore to the court that he had discussed the waiver provision with his lawyer and that he understood it. See Rule 11 Tr. 27–29. In light of Hannigan's Rule 11 proceeding, the appellate waiver is valid and enforceable. See, e.g., Rule 11 Tr. 4–21, 25–37; United States v. Copeland, 707 F.3d 522, 528 (4th Cir. 2013); United States v. Davis, 689 F.3d 349, 354–55 (4th Cir. 2012) (per curiam); United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012); United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005).

10

Furthermore, Hannigan's sentence was within the advisory guideline range established at sentencing and a direct appellate attack on his sentence falls within the appellate waiver. In fact, on May 5, 2010, at the end of Hannigan's sentencing, this court told Hannigan:

> Mr. Hannigan, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary, or if there was some other fundamental defect in the proceeding that was not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think your sentence is contrary to law. However, a defendant may waive those rights as part of a plea agreement and you did enter into a plea agreement[,] which waives certain appellate rights. At the time of your guilty plea[,] I read to you the appellate waiver contained in your plea agreement. In the court's view, in light of the sentence you've received, the court believes you waived your right to appeal your sentence. If you believe the waiver is unenforceable or inapplicable for any reason, you can present that theory to the appellate court. With few exceptions, any notice of appeal must be filed within 14 days of the judgment being entered on the docket in this case. If you are unable to pay the cost of an appeal, you may appeal for leave to appeal in forma pauperis. If you so request, the clerk of court will prepare and file a notice of appeal on your behalf.

Sentencing Tr. 17–18.

Notwithstanding Hannigan's appellate waiver, if Hannigan directed his defense counsel to file a notice of appeal after the court sentenced Hannigan, defense counsel would have been constitutionally ineffective if defense counsel failed to file the notice of appeal. See, e.g., United States v. Poindexter, 492 F.3d 263, 265 (4th Cir. 2007). Nonetheless, plausibly alleging such an ineffective assistance of counsel claim (and Hannigan has) does not mean that Hannigan could wait indefinitely before filing a section 2255 motion alleging the claim. See 28 U.S.C. § 2255(f)(4); Ryan, 657 F.3d at 607–08; Anjulo-Lopez, 541 F.3d at 817–19; Wims, 225 F.3d at 190–91.

On May 5, 2010, this court sentenced Hannigan to 336 months' imprisonment. On May 5, 2010, Hannigan then met with his defense counsel at the Wake County Jail and Hannigan told his

11

counsel to appeal. See [D.E. 33] 4; [D.E. 33-1] 1.[6] Defense counsel agreed that he would. See [D.E. 33] 4; [D.E. 33-1] 1. Defense counsel told Hannigan that appeals took a long time to process and not to expect results right away. See [D.E. 33] 14; [D.E. 33-1] 3. Defense counsel also told Hannigan that he was moving his law office from Wilmington to Raleigh and gave Hannigan his new Raleigh address. See [D.E. 33-1] 2; [D.E. 43] 5.

Hannigan remained in local county jails from May 5, 2010, until July 13, 2010. See [D.E. 43] 6. On July 13, 2010, Hannigan was transferred to FCI Butner in North Carolina. Id. Before transferring to FCI Butner, Hannigan mailed unidentified paperwork and other personal property to his defense counsel in Raleigh. Id. Hannigan remained at FCI Butner from July 15, 2010, through October 5, 2010. See id. Hannigan describes no communications or attempted communications that he had with his defense counsel while at FCI Butner from July 15, 2010, through October 5, 2010. On October 5, 2010, the Bureau of Prisons ("BOP") transferred Hannigan to FCI Petersburg in Virginia. Id. Upon arriving at FCI Petersburg, Hannigan wrote a letter to his defense counsel and sent it to counsel's Raleigh address. Id. Hannigan does not say what he said to his defense counsel in the letter, but does state that counsel did not respond to his letter. Id. Hannigan believed that the lack of response was due to an incorrect address. Id.

In October 2010, after not receiving a response from defense counsel to his letter, Hannigan asked an unidentified BOP official on his Unit Team at FCI Petersburg to verify his defense counsel's address. Id. This BOP official, however, told Hannigan that verifying addresses was "not [my] responsibility." Id. Hannigan then wrote the United States Marshal in Raleigh asking for

---

[6] The court draws the facts from Hannigan's section 2255 motion [D.E. 33], Hannigan's affidavit in support of his section 2255 motion [D.E. 33-1], and Hannigan's response in opposition to the government's motion to dismiss [D.E. 43].

12

assistance in contacting his defense counsel "in order to obtain his property and verify [c]ounsel's address," but the United States Marshal did not respond to Hannigan's letter. Id.

According to Hannigan, Hannigan then did nothing concerning either his appeal or attempting to contact his defense counsel for the remainder of 2010, all of 2011, all of 2012, and at least six months of 2013. See [D.E. 33] 4; [D.E. 33-1] 4. On June 17, 2013, the Supreme Court decided Alleyne. According to Hannigan, at some point after the Supreme Court decided Alleyne, he was in the law library at FCI Petersburg and "stumbled upon" Alleyne. [D.E. 43] 6. Upon reading Alleyne, Hannigan wrote a letter to his defense counsel in Raleigh asking about his property, the status of his appeal, and whether Alleyne applied to him. See [D.E. 33] 4; [D.E. 33-1] 4; [D.E. 43] 6. Hannigan does not state the date in 2013 when he mailed this letter to defense counsel, but according to Hannigan, his defense counsel did not respond to the letter. See [D.E. 33] 4; [D.E. 33-1] 4; [D.E. 43] 6. Hannigan then "became concerned." [D.E. 33-1] 4.

After failing to receive a response from his defense counsel in the summer of 2013, Hannigan asked an unidentified person on his BOP Unit Team to let him view his Presentence Investigation Report ("PSR") in order to obtain defense counsel's address listed on the PSR. See [D.E. 43] 7. The PSR contained a Wilmington address for counsel. See [D.E. 33] 14. In September 2013, Hannigan copied counsel's Wilmington mailing address from the PSR and sent certified letters to defense counsel at the Wilmington address on the PSR and to the Raleigh address that he had received from defense counsel on May 5, 2010. See [D.E. 43] 7; [D.E. 33-2] Exs. 1–3; [D.E. 33] 14. Shortly thereafter, the United States Postal Service returned to Hannigan the letter that Hannigan addressed to the Wilmington address as "undeliverable." [D.E. 43] 7. The letter that Hannigan sent to his defense counsel's Raleigh address "was delivered and ignored." Id.

After receiving the returned mail, Hannigan wrote the clerk of this court in mid-September

13

2013 to obtain a copy of the docket in his case. See [D.E. 33] 4, 14; [D.E. 33-1] 4. On October 1, 2013, Hannigan received a copy of the docket from the clerk. See [D.E. 33] 14. The docket was dated September 26, 2013. Id. 4. Upon receiving the docket on October 1, 2013, Hannigan first learned that his defense counsel failed to file a notice of appeal in May 2010. See [D.E. 33] 4; [D.E. 33-1] 4.

Hannigan claims that he exercised due diligence and that the one-year clock under section 2255(f)(4) began running on October 1, 2013, when he received the docket sheet in his case and actually discovered that his defense counsel had not filed a notice of appeal. See [D.E. 33] 14. Because he filed his section 2255 motion within one year of October 1, 2013, Hannigan contends that his June 5, 2014 section 2255 motion is timely under section 2255(f)(4). See id.

"The exercise of reasonable diligence is an ongoing process. What is required at any particular time depends on what one has notice of at that time." Denny, 694 F.3d at 1190. For example, "[w]hen additional information is obtained [or not obtained], the standard of reasonable diligence may demand action that would not have been demanded without receipt [or nonreceipt] of the information." Id. Here, Hannigan believed that his defense counsel agreed to file a notice of appeal at their meeting on May 5, 2010, and believed that processing appeals took a long time. Hannigan was then in local jails from May 5, 2010, until being transferred to FCI Butner on July 15, 2010. In early July 2010, Hannigan mailed a letter enclosing some personal property and paperwork to his defense counsel in Raleigh before being transferred to FCI Butner, but Hannigan did not send any communication to counsel while at FCI Butner from July 15, 2010, through October 5, 2010. Up to this point, the court could not say that, under section 2255(f)(4)'s objective standard, Hannigan failed to act with "due diligence." Cf., e.g., Ryan, 657 F.3d at 607–08; Granger, 90 F. App'x at 100; Wims, 225 F.3d at 190–91.

On October 5, 2010, the BOP transferred Hannigan to FCI Petersburg in Virginia. Upon arriving at FCI Petersburg, Hannigan had the ability to send mail, and in fact, sent a letter to his defense counsel's Raleigh address in October 2010 about an unidentified topic, but defense counsel did not respond to the letter. Hannigan believed that the nonresponse was due to an incorrect address; therefore, Hannigan took two steps in October 2010 to obtain defense counsel's correct address. First, he asked an unidentified BOP official to verify defense counsel's address, but the BOP official declined to find counsel's address for Hannigan. Second, Hannigan wrote a letter to the United States Marshal in Raleigh concerning his counsel's address, but the United States Marshal did not respond to the letter.

At this juncture, in late October or early November 2010, Hannigan was in a federal prison in Virginia where he was able to write letters and send and receive mail. His defense counsel had not responded to his July 2010 letter or to his October 2010 letter. If Hannigan wanted to know his defense counsel's address, or more importantly, wanted to know whether counsel had filed a notice of appeal in his case, he could have written the clerk of this court or the clerk of the Fourth Circuit. He did neither, even though whether a notice of appeal was filed is a matter of public record. Cf. Anjulo-Lopez, 541 F.3d at 819 (considering whether prisoner could have learned needed information through a public record in assessing "due diligence" under section 2255(f)(4)); see also Green v. Johnson, 515 F.3d 290, 305 (4th Cir. 2008) (analyzing "due diligence" standard in 28 U.S.C. § 2244(d)(1)(D) of the AEDPA and permitting a reviewing court to consider whether a prisoner could have obtained needed information through a public source); Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (holding that limitation period was triggered under 28 U.S.C. § 2244(d)(1)(D) of the AEDPA on the date an inmate could have discovered the factual predicate of his claim "through public sources"); Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2000) ("[T]he lack of a[n appeal] was

15

a matter of public record, which reasonable diligence could have unearthed.").[7] Hannigan also took no other steps directly or indirectly to communicate or attempt to communicate with defense counsel or anyone else about his appeal from November 2010 until reading Alleyne in the prison law library at some point after June 17, 2013. At a minimum, for 31.5 months (i.e., November 2010 through June 17, 2013), Hannigan did nothing about his appeal or the lack of communication with his defense counsel concerning a sentence imposed in May 2010.

To the extent Hannigan relies on Holland v. Florida, 560 U.S. 631 (2010), to support his claim of diligence, Holland is distinguishable. Holland involved the doctrine of equitable tolling, not the application of section 2255(f)(4), and primarily concerned whether the equitable tolling doctrine could be applied in cases of attorney misconduct. See Holland, 560 U.S. at 649–52. Nonetheless, because the equitable tolling doctrine also analyzes whether a petitioner has diligently pursued his rights and because the district court found that Holland had not exercised due diligence, the Court reviewed the issue and found that "the District Court erroneously relied on a lack of diligence." Id. at 653. In so finding, the Court noted that Holland "wrote his attorney numerous letters seeking crucial information and providing direction," "repeatedly contacted the state courts,

---

[7] The Supreme Court and various circuit courts have used the "due diligence" standard in 28 U.S.C. § 2244(d)(1)(D) of the AEDPA in analyzing the "due diligence" standard in 28 U.S.C. § 2255(f)(4) of the AEDPA and vice versa. See, e.g., Walker, 131 S. Ct. at 1129 (noting that section 2244(d)(1)(D) is a "similar provision" to section 2255(f)(4)); Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1155 & n.12 (11th Cir. 2014) (comparing the two sections and recognizing that for federal prisoners "the analogous provision to [section] 2244(d)(1)(D)" is section 2255(f)(4)); Humphreys v. United States, 238 F. App'x 134, 139 (6th Cir. 2007) (unpublished) (recognizing that section 2244(d)(1)(D) is the "state equivalent to" section 2255(f)(4)); McAleese v. Brennan, 483 F.3d 206, 216 n.13 (3d Cir. 2007) (finding no reason to distinguish the language of the two provisions); Daniels v. Uchtman, 421 F.3d 490, 492 n.2 (7th Cir. 2005) (stating that section 2255(f)(4) "is the counterpart to [section] 2244(d)(1)(D); the provisions are virtually identical and the Supreme Court has interpreted the statute of limitations provisions interchangeably."); Shannon v. Newland, 410 F.3d 1083, 1088 (9th Cir. 2005) (noting that the two provisions "are almost identical" and that the Supreme Court has interpreted them "in concert with one another").

16

their clerks, and the ... State Bar Association," and expeditiously prepared and submitted filings pro se when his counsel failed to do so. Id.

Hannigan's efforts do not remotely compare to the prisoner's efforts in Holland. As early as October 2010, Hannigan was on notice that he did not have defense counsel's correct address. See [D.E. 43] 6. Although aware of this "breakdown in communication" between himself and defense counsel, Hannigan did not take affirmative action commensurate with the efforts made in Holland to rectify the situation. Holland, 560 U.S. at 637 (quotation omitted). Hannigan did not notify the court regarding any alleged attorney abandonment. Cf. id. Hannigan did not ask for a new lawyer or seek to have his attorney dismissed from his case. Cf. id. Hannigan did not complain to the State Bar. Cf. id. After Hannigan's initial efforts (i.e., asking the BOP official and writing a letter to the United States Marshal in Raleigh) to uncover counsel's address proved unsuccessful, he did nothing further for over two and a half years. See [D.E. 33] 4; [D.E. 33-1] 4. Of course, petitioners are not required to "undertake repeated exercises in futility or to exhaust every imaginable option;" however, Hannigan did not make any effort during that time period, let alone reasonable efforts. Aron, 291 F.3d at 712.

Moreover, unlike in Holland, Hannigan did not attempt to stay abreast of and involved in his appeal. In Holland, the petitioner wrote multiple letters to the clerk asking what was happening with his case, repeatedly contacted his attorney regarding the status of his appeals and petitions, and, at times, took matters into his own hands. Holland, 560 U.S. at 637–43. In contrast, Hannigan blindly relied on his attorney's statement that "appeals [take] a long time and could last years," [D.E. 33] 14, and decided to wait and do nothing. Hannigan's unquestioning acceptance of his attorney's vague timeline does not constitute the exercise of due diligence. Although the "new fact" was readily and publicly discoverable as early as May 27, 2010, when the time for filing an appeal

17

expired, Hannigan made no reasonable efforts to inquire into the status of his appeal until mid-2013. Hannigan could have uncovered this fact earlier had he contacted the clerk of this court or the Fourth Circuit. Moreover, Hannigan "either already knew or could have known to do this earlier, because this is the very method by which he ultimately learned of the absence of an appeal." Burks v. United States, No. 3:12-CV-913-J-34JBT, 2015 WL 224639, at *6 (M.D. Fla. Jan. 15, 2015) (unpublished). Indeed, "[i]t would have required no extraordinary diligence to place a phone call or dispatch a letter to the clerk of either court to inquire about a notice of appeal." Id. Furthermore, as in Burks, this court advised Hannigan on May 5, 2010, that he had 14 days to file a notice of appeal. See Sentencing Tr. 17–18. Thus, if Hannigan expected his attorney to file a notice of appeal, Hannigan knew that the notice of appeal had to be on the docket within 14 days of his May 5, 2010 sentencing. See Burks, 2015 WL 224639, at *6.

Although due diligence "is an inexact measure of how much delay is too much," Hannigan's nearly three-year delay was too long. Johnson, 544 U.S. at 309 n.7; see Burks, 2015 WL 224639, at *4–8. Hannigan could have discovered his counsel's failure to appeal well over a year before he filed his section 2255 motion to vacate. Accordingly, Hannigan did not exercise "due diligence." In reaching this conclusion, the court has considered the conditions of Hannigan's confinement in 2010, 2011, 2012, and 2013, his ability to write, mail, and receive letters during this time period, his conversation with his defense counsel on May 5, 2010, his July and October 2010 letters to his defense counsel for which he received no response, his efforts in October 2010 to obtain an address for defense counsel, the fact that whether a notice of appeal was filed is a matter of public record, his failure to do anything concerning his appeal in 2011, 2012, and (at least) nearly half of 2013, and the other circumstances that Hannigan describes in his papers concerning his conduct in 2013 after reading Alleyne. Because Hannigan did not exercise due diligence, the date of Hannigan's actual

18

discovery is not "identical" to the date of possible discovery. See Aron, 291 F.3d at 711.

The court need not pick a specific date on which Hannigan could have discovered through the exercise of "due diligence" that his counsel had failed to file a notice of appeal. See Aron, 291 F.3d at 711 n.1; Ryan, 657 F.3d at 608. As a matter of law, that date was well before June 5, 2013. See, e.g., Clarke v. United States, 703 F.3d 1098, 1100–01 (7th Cir. 2013); Denny, 694 F.3d at 1189–90; Anjulo-Lopez, 541 F.3d at 818–19; Wade, 327 F.3d at 333. On this record, applying the objective standard that Congress adopted in section 2255(f)(4), Hannigan's claim of ineffective assistance of counsel for failing to file a notice of appeal is untimely under 28 U.S.C. § 2255(f)(4).

B.

Finally, Hannigan contends that equitable tolling should apply to his section 2255 motion. To be entitled to equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (quotation omitted); see Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95–96 (1990); Whiteside, 775 F.3d at 184; United States v. Shank, 395 F.3d 466, 470 n.6 (4th Cir. 2005); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); Rouse v. Lee, 339 F.3d 238, 246–47 (4th Cir. 2003) (en banc); Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002); Harris v. Hutchinson, 209 F.3d 325, 330–31 (4th Cir. 2000).

Hannigan argues that his untimely section 2255 motion should be excused in light of his "extraordinary circumstance," namely, his counsel's abandonment of him. See [D.E. 43] 7–9. In support, Hannigan relies on Maples v. Thomas, 132 S. Ct. 912 (2012), where the Court held that the abandonment of a client can constitute "cause" to excuse a procedural default. See Maples, 132 S. Ct. at 924. This court need not decide whether Hannigan's counsel abandoned him or whether an "extraordinary circumstance" prevented Hannigan from filing. Assuming without deciding that

19

Hannigan has presented "an extraordinary circumstance," Hannigan is still not entitled to equitable tolling because, as discussed, he did not diligently pursue his rights concerning any of his five grounds for relief. See Holland, 560 U.S. at 652–53; Cole, 768 F.3d at 1158; United States v. Arrowgarp, 558 F. App'x 824, 825–26 (10th Cir. 2014) (unpublished); Watts v. Warden Lieber Corr. Inst., 549 F. App'x 192, 193 (4th Cir. 2013) (per curiam) (unpublished); Lucas v. United States, 522 F. App'x 556, 558–60 (11th Cir. 2013) (per curiam) (unpublished); Clarke, 703 F.3d at 1101 ("The petitioner cannot avail [himself] of equitable tolling because [he] flunked diligence."); United States v. Oriakhi, 394 F. App'x 976, 978 (4th Cir. 2010) (per curiam) (unpublished) ("Because we conclude that [petitioner] cannot show that he diligently pursued his rights, we need not address the second Holland prong . . . ."). Accordingly, Hannigan is not entitled to equitable tolling.

C.

After reviewing the claims presented in Hannigan's section 2255 motion, the court determines that reasonable jurists would not find the court's treatment of the claims debatable or wrong, and that none deserve encouragement to proceed any further. Thus, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

III.

In sum, the court GRANTS the government's motion to dismiss [D.E. 37] and DISMISSES Hannigan's section 2255 motion [D.E. 33] as untimely. The court DENIES a certificate of appealability.

SO ORDERED. This 10 day of March 2015.

*James Dever* (signature)
JAMES C. DEVER III
Chief United States District Judge